T.C. Memo. 2001-309

UNITED STATES TAX COURT

JAMES K. GAUDET, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12832-00.                    Filed December 7, 2001.

James K. Gaudet, pro se.

<u>Linda A. Neal</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Carleton D. Powell pursuant to section 7443A(b)(5) and
Rules 180, 181, and 183.  All section references are to the
Internal Revenue Code applicable for the period involved, and all
Rule references are to the Tax Court Rules of Practice and

Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge: This case involves the denial of a request by petitioner to respondent to abate interest under section 6404(e). On February 9, 2000, petitioner submitted a Form 843, Claim for Refund and Request for Abatement, to respondent. The request pertained to the interest due on the deficiency for the taxable year 1996. By letter dated June 23, 2000, respondent determined that petitioner was not entitled to the requested abatement, and the request was denied by respondent's Appeals Office. On December 8, 2000, petitioner filed a petition for review of that determination with this Court. At the time the petition for review was filed, petitioner resided in Gretna, Louisiana.

The facts may be summarized as follows. Petitioner prepared a joint 1996 Federal income tax return with his then wife, Virginia. Before or during 1996, Virginia's parents had died, and Virginia had received inheritances that she invested with Legg Mason, a brokerage firm. Petitioner, an attorney, had settled the estates of Virginia's parents and was aware that she had received the inheritances. Legg Mason sent Virginia a Form 1099 showing income of $14,248 for 1996. The Form 1099 was not received until around April 20, 1997, after petitioner and

Virginia had filed their 1996 tax return.  Virginia gave petitioner a Form 1099 that he filed away for their 1997 tax return.  Petitioner claims that Virginia told him that the Form 1099 pertained to the 1997 taxable year.  Petitioner apparently never looked at the form.  Virginia received monthly statements from Legg Mason, but petitioner did not review the statements in preparing their 1996 tax return.  Petitioner did not include any income from Legg Mason in the 1996 tax return.

On July 20, 1998, respondent sent a Notice CP-2000, Proposed Changes to Income or Withholding Tax, a so-called CP-2000 letter, to petitioner and Virginia notifying them that they had unreported interest and/or dividend income of $14,248.  By letter dated July 21, 1998, petitioner wrote respondent to "contest any and all interest charges because your office should have notified me during calander [sic] year 1996 and no later than the month of August of 1996."  At least by July 1998, petitioner knew that the deficiency had been proposed, but he wanted to "investigate it before * * * [he replied]."  By the end of September 1998, petitioner knew that the proposed deficiency was correct.[1]

On February 5, 1999, respondent sent a notice of deficiency to petitioner's and Virginia's last known address determining a

---

[1]  Petitioner later testified that he concluded that he owed the tax only after the file was sent to New Orleans, Louisiana. For reasons discussed infra, we believe that his earlier testimony more accurately reflected what happened.

deficiency of $3,990 on the unreported income from Legg Mason. The notice was sent by certified mail, and respondent's file indicates that the notice was not returned. Petitioner claims that he did not receive the notice, and no petition for a redetermination was filed with this Court. By letter dated May 14, 1999, however, petitioner wrote respondent stating: "we do not admit that the Legg Mason interest amounts are due". He further stated that he disputed the interest and penalties because "the IRS did not notify us in a timely manner thereby causing us to be infected [sic] with the said penalties and interest."

On or about August 23, 1999, petitioner sent a Form 843, Claim for Refund and Request for Abatement, to respondent requesting that the $3,990 deficiency, penalties, and interest be abated. He alleged that the interest was caused by respondent's "errors or delays" and that the "penalty or addition to tax * * * [was the] result of erroneous advice from the IRS."

Although the record does not reveal the date, apparently at some time subsequent, respondent assessed the deficiency. On February 9, 2000, petitioner sent another Form 843 to respondent seeking an abatement of the penalties and interest only. By letter dated April 6, 2000, petitioner was notified by the District Director that his request for abatement had been

denied.[2]  Petitioner paid the deficiency of $3,990 on May 4,

2000.  Petitioner sought review of his interest abatement request

by the Appeals Office.  The Appeals Office denied petitioner's

request by letter dated June 23, 2000.

Section 6404(e) provides in relevant part:

(1) In general.--In the case of any assessment of interest on--

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, * * *

*      *      *      *      *      *      *

the Secretary may abate the assessment of all or any part of such interest for any period.  For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency * * *.

Section 6404(i)(1) provides further that the "Tax Court shall

have jurisdiction over any action brought by a taxpayer * * * to

determine whether the Secretary's failure to abate interest * * *

was an abuse of discretion, and may order an abatement".[3]

The Internal Revenue Code does not define a ministerial act.

---

[2]  Respondent apparently did abate an addition to tax under sec. 6651 for failure to timely pay the tax.

[3]  Sec. 6404(i) also contains jurisdictional requirements to bring such an action.  Respondent has not raised any jurisdictional bar, and the Court is satisfied that these prerequisites have been satisfied.

The Report of the Senate Finance Committee accompanying the Tax
Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, states:

> The committee does not intend that this provision be used
> routinely to avoid payment of interest; rather, it intends
> that the provision be utilized in instances where failure to
> abate interest would be widely perceived as grossly unfair.
> The interest abatement only applies to the period of time
> attributable to the failure to perform the ministerial act.
>
> *     *     *     *     *     *     *
>
> The committee intends that the term "ministerial act"
> be limited to nondiscretionary acts where all of the
> preliminary prerequisites, such as conferencing and review
> by supervisors, have taken place.  Thus, a ministerial act
> is a procedural action, not a decision in a substantive area
> of tax law.  For example, a delay in the issuance of a
> statutory notice of deficiency after the IRS and the
> taxpayer have completed efforts to resolve the matter could
> be grounds for abatement of interest.  The IRS may define a
> ministerial act in regulations.  [S. Rept. 99-313, at 208-
> 209 (1986), 1986-3 C.B. (Vol. 3) 1, 208-209.]

The regulations provide:

> The term "ministerial act" means a procedural or mechanical
> act that does not involve the exercise of judgment or
> discretion, and that occurs during the processing of a
> taxpayer's case after all prerequisites to the act, such as
> conferences and review by supervisors, have taken place.  A
> decision concerning the proper application of federal tax
> law (or other federal or state law) is not a ministerial
> act.  [Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin.
> Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).]

While petitioner's original application for abatement
encompasses the deficiency and all the interest due for the 1996
taxable year, his subsequent request relates only to interest,
and at the hearing, petitioner narrowed the scope of his request
for abatement to the period between July 1998 (when he alleges
that he orally requested that the file be sent from the Internal

- 7 -

Revenue Service Center in Chamblee, Georgia, to respondent's offices in New Orleans, Louisiana) to the date of payment. To fit within the ambit of section 6404(e), petitioner must prove that the accrual of interest during that period was the result of a delay by employees of the Internal Revenue Service, acting in their official capacity, in performing ministerial acts. See sec. 6404(e)(1)(A). Respondent contends that the delay, if indeed there was any delay, was not the result of a ministerial act, and, therefore, section 6404(e)(1)(A) does not apply.

At the hearing, the following exchange occurred:

> THE COURT: Where is the ministerial act that you complain about?

> THE WITNESS [petitioner]: It's not a ministerial act. It's an error, and it's primarily a delay in transporting this case from Atlanta--whatever--to New Orleans.

We disagree with petitioner that there was an error or delay by an employee of the Internal Revenue Service in performing a ministerial act within the meaning of section 6404(e).

Congress did amend section 6404(e) in 1996 to permit abatement of interest for "unreasonable" error and delay in performing a "ministerial or managerial" act. Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996). That standard, however, applies to tax years beginning after July 30, 1996. Id. subsec. (c). Petitioner's taxable year here began January 1, 1996, and the TBOR 2 amendment does not apply.

Furthermore, even if the amended section 6404(e) were applicable, we seriously doubt whether under these circumstances there was an "unreasonable error" in not sending the file to New Orleans. The initial CP-2000 letter was issued from the Internal Revenue Service Center in Chamblee, Georgia, and we would not find that, by not sending petitioner's file to New Orleans, respondent unreasonably erred in performing a ministerial or managerial act. Petitioner has failed to demonstrate how or why that inaction would be unreasonable.

Finally, it should be noted that we are by no means convinced that any delay, to which the accrued interest would be attributable, was due to respondent's action. Petitioner knew his wife had assets inherited from her parents, but, when preparing the tax return, he never bothered to determine what income she had received from those assets. After the initial CP-2000 letter from respondent, petitioner knew precisely what Legg Mason had reported to respondent. Petitioner testified initially that he knew he owed the tax in September 1998, and later he changed his testimony. His second version was that he did not know until the file was sent to New Orleans in April or May of 2000. But he had contacted Legg Mason in August 1998. His later explanation that he did not know what information respondent had before the file was sent to New Orleans has a decidedly hollow ring. Realistically, the accrued interest was due to

petitioner's failure to pay the tax, and not to any error or delay by respondent in performing a ministerial act.

Decision will be entered

for respondent.
